IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DOUGLAS MICHAEL POWERS,

                Plaintiff,

vs.

AMAZON WEB SERVICES, INC.,

                Defendant.

Case No.:

**JURY TRIAL DEMANDED**

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF UNDER THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT (USERRA), 38 U.S.C. §§ 4301-4335 AND DEMAND FOR JURY TRIAL**

---

Plaintiff Douglas Michael Powers ("Plaintiff" or "Mr. Powers"), by and through his undersigned counsel, brings this action against Defendant Amazon Web Services, Inc. ("AWS" or "Defendant") for violations of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301-4335, and states as follows:

**PRELIMINARY STATEMENT**

1. This is a civil action brought pursuant to USERRA, 38 U.S.C. §§ 4301-4335, seeking damages and equitable relief arising from Defendant's unlawful

termination of Plaintiff's employment while Plaintiff was on approved military leave for a deployment with the United States Army National Guard.

2. Plaintiff seeks (1) reinstatement or front pay and (2) back pay, lost wages and benefits, liquidated damages for Defendant's willful violation of USERRA, attorneys' fees, expert witness fees, and other litigation expenses.

## I.    JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as conferred by 38 U.S.C. § 4323(b)(3), which grants federal district courts jurisdiction over actions brought by a person against a private employer under USERRA.

4. Venue is proper in the United States District Court for the Northern District of Georgia pursuant to 38 U.S.C. § 4323(c)(2), which provides that an action against a private employer may proceed in any district in which the private employer maintains a place of business. Defendant Amazon Web Services, Inc. maintains a place of business at 3333 Piedmont Road NE, Atlanta, Georgia 30305, within this judicial district.

5. Pursuant to 38 U.S.C. § 4323(h)(1), no filing fees or court costs shall be charged or taxed against any person claiming rights under USERRA.

## II.    THE PARTIES

6. Plaintiff Douglas Michael Powers is a natural person and citizen of the United States who, at all times relevant to this Complaint, resided in Smyrna, Georgia, within the Northern District of Georgia.

7. Plaintiff is a member of the Army National Guard, currently holding the rank of Chief Warrant Officer 4 (CW4). Plaintiff is a member of the "uniformed services" as that term is defined in 38 U.S.C. § 4303(16).

8. Defendant Amazon Web Services, Inc. is a corporation organized and existing under the laws of the State of Delaware and is a subsidiary of Amazon.com, Inc.

9. Defendant maintains a place of business at 3333 Piedmont Road NE, Atlanta, Georgia 30305, with approximately 1,000 employees at that location.

10. At all times relevant to this Complaint, Defendant was and is an "employer" within the meaning of 38 U.S.C. § 4303(4)(A), having engaged persons in employment in the private sector.

## IV.    STATEMENT OF FACTS

### A. Plaintiff's Employment with AWS

11. On February 29, 2024, Defendant extended a written offer of employment to Plaintiff for the position of Senior Security Specialist on the Wickr Go-to-Market Team (WWSO Wickr), located at Defendant's Atlanta, Georgia facility (ATL19). Plaintiff accepted this offer on February 29, 2024.

12. On or about March 6, 2024, Plaintiff commenced employment with Defendant as a Senior Security Specialist on the Wickr Team (Go-to-Market) at Defendant's Atlanta, Georgia location.

13. Plaintiff was employed as a full-time, salaried, exempt employee. As stated in Defendant's offer letter, because Plaintiff's position was exempt from overtime pay, his salary was intended to compensate him for all hours worked.

14. Plaintiff's annual base salary was $195,000.00, payable in accordance with Defendant's standard payroll practice, equating to $8,125.00 paid bi-monthly.

15. In addition to his base salary, Plaintiff was eligible for a Year 1 sign-on bonus of $139,500.00, to be paid in prorated installments over his first year of employment with Defendant, with each installment earned at the time of payment.

16. Plaintiff was also eligible for a Year 2 sign-on bonus of $103,600.00, to be paid in prorated pay period installments during his second year of employment, equating to approximately $4,316.00 per pay period, with each installment earned at the time of payment.

17. Defendant's offer letter explicitly stated that "[l]eaves of absence may affect how and when a payment is earned and paid, as detailed in the Company's policies and Benefits Guide During Leave at the time leave is taken."

18. Plaintiff was also granted a Restricted Stock Unit ("RSU") award with respect to 1,975 shares of Amazon.com, Inc. common stock, subject to approval by the Board of Directors of Amazon.com, Inc.

19. Under the terms of Plaintiff's RSU award, the shares were to vest and convert into shares of common stock over four years as follows, subject to Plaintiff's continued employment with Defendant: (a) 5% (approximately 99 shares) on the 15th day of the month in which Plaintiff reached his first anniversary of employment; (b) 15% (approximately 296 shares) on the 15th day of the month in which Plaintiff reached his second anniversary of employment; and (c) 20% every six months thereafter, until fully vested.

20. As of the date of Plaintiff's termination, approximately 1,876 RSUs remained unvested, with a current estimated value of approximately $414,750.00.

21. Plaintiff's employment benefits included 401(k) retirement plan participation, dental insurance, vision insurance, and vacation leave of 130 hours per year and 40 hours of sick leave per year.

22. Plaintiff did not enroll in Defendant's medical insurance, as he maintained Tricare Reserve Select as his primary health insurance coverage.

23. As a condition of his employment, Plaintiff signed a Confidentiality, Noncompetition and Invention Assignment Agreement with Amazon.com, Inc.

This agreement included an 18-month post-separation non-competition clause and an 18-month post-separation non-solicitation clause.

24. Plaintiff did not sign an arbitration agreement or dispute resolution policy with Defendant.

25. In accepting the position with Defendant, Plaintiff forfeited significant compensation from his prior employer, Zoom Video Communications, Inc., including 4,484 shares of Zoom stock with an estimated current value of approximately $383,068.12, and a bonus of approximately $197,000.00.

26. During his employment with Defendant, Plaintiff demonstrated exceptional job performance. Plaintiff's job duties included serving as a go-to-market specialist responsible for helping to sell the Wickr secure communications product to the Department of Defense.

27. Plaintiff achieved the largest sale in AWS's history for the Wickr product line—a $6 million end-user license agreement with the United States Army.

28. Plaintiff was not subject to a probationary period.

### B. Plaintiff's Military Service

29. Plaintiff is a member of the Army National Guard, holding the rank of Chief Warrant Officer 4 (CW4).

30. On or about December 29, 2025, Plaintiff received deployment orders requiring him to report for active military duty beginning February 4, 2026, with an

expected end date of September 30, 2026, and a likelihood of extension through December 31, 2026.

31. This deployment constitutes Plaintiff's first military absence from his employment with Defendant. Plaintiff's total cumulative period of military service with this employer, including all prior absences for military duty, was zero days prior to this deployment.

## C. Notice of Military Service

32. On December 29, 2025, Plaintiff provided Defendant with advance notice of his upcoming military service obligation via email to Defendant's HR System, notifying Defendant of military leave dates from January 19, 2026, through November 1, 2026.

33. This notice was provided in accordance with Defendant's Military Leave policy, which requested that employees "[r]equest leave 30 days before your leave starts whenever possible" and "[a]pply as soon as you receive your orders and know when you will need time off work."

34. Defendant approved Plaintiff's military leave request. Plaintiff received an approval notification confirming that his leave was approved.

35. Plaintiff submitted copies of his military orders to Defendant.

36. Defendant's Military Leave policy documents stated that employees on military leave "will continue to receive your elected health benefits until the end of the

month following 12 weeks of leave" and that employees could continue health care coverage through COBRA if leave extended beyond 12 weeks, with "[s]uch coverage continu[ing] for a maximum of 24 months during any military leave."

37. Defendant's Military Leave policy also stated: "We understand that circumstances may change your expected return to work date or how you return to work after military service. The DLS team can work with you to determine the appropriate accommodation for your situation."

38. Defendant's Military Leave policy expressly confirmed that promotions could proceed regardless of leave status, stating: "Yes, a planned promotion can move forward regardless of an upcoming or current leave."

39. Based on Defendant's policy documents that Plaintiff reviewed, Plaintiff understood that his job would be held for him during his military absence and that he would have a position upon his return.

40. Plaintiff's last day of physical work for Defendant was January 16, 2026.

41. Plaintiff departed for military service on February 3, 2026.

42. Plaintiff remains on active military service as of the date of this Complaint.

### D. Adverse Employment Action

43. On January 28, 2026, while Plaintiff was on approved military leave without pay and prior to his departure for his deployment, Plaintiff received a separation notice from Defendant via email from Defendant's HR department.

44. The separation notice, dated January 28, 2026, informed Plaintiff: "As you have been advised, we made the difficult decision to eliminate your position with the company (with employee separations beginning effective 04/28/2026)."

45. The separation notice informed Plaintiff that his position was eliminated as part of a company-wide reduction in force ("RIF") purportedly affecting approximately 16,000 employees. The stated reason for the layoff was "restructuring."

46. The separation notice established a "notification period" from January 28, 2026, through April 28, 2026, during which Plaintiff was "not expected to report or to perform any specific work for Amazon."

47. The separation notice stated that during the notification period, employees would "remain employed and will receive such pay and benefits (as applicable) for which you would be otherwise be eligible."

48. Because Plaintiff was on approved military leave without pay at the time of the layoff announcement, Plaintiff did not receive usual paychecks during the notification period, unlike similarly situated employees who were not on military leave.

49. Plaintiff was informed he could apply for other positions within AWS during the notification period. The separation notice stated: "You can learn about open positions at Amazon anytime via jobfinder.amazon.com."

50. However, Plaintiff cannot return from his military deployment until October 2026 or later, effectively precluding him from competing for internal positions before his scheduled separation date of April 28, 2026.

51. The separation notice stated: "The elimination of your position is expected to be permanent. Amazon does not allow the displacement of other employees based upon seniority, e.g., no 'bumping rights.'"

52. Defendant did not disclose to Plaintiff the criteria used to select employees for termination as part of the RIF.

53. Upon information and belief, Erik Durrand (Plaintiff's direct supervisor) and Nihar Bihani were decision-makers involved in the adverse employment decisions affecting Plaintiff.

54. Upon information and belief, Will Martin, a non-military peer on Plaintiff's Wickr team, was retained while Plaintiff was selected for termination. Mr. Martin was the only person on Plaintiff's team who was retained.

55. Upon information and belief, Mr. Martin's wife holds a leadership position running the Department of Defense business for AWS.

56. Mr. Martin subsequently assumed Plaintiff's job responsibilities, filling the position that Defendant claimed was "eliminated."

57. The separation notice stated that upon termination of employment, "your Restricted Stock Unit Grants (if any) will stop vesting."

58. Plaintiff's RSU grants have stopped vesting due to his termination.

59. Plaintiff's Year 2 sign-on bonus installments have been disrupted by his termination. Plaintiff estimates that approximately $26,500.00 in Year 2 sign-on bonus remains unpaid.

60. Plaintiff was offered a severance package consisting of a minimum of four (4) weeks of base salary paid severance, plus an additional taxable lump sum payment equivalent to the total premium cost for six (6) months of health coverage, plus forgiveness of any outstanding obligations for signing bonus or relocation expenses.

61. However, as Plaintiff does not have medical, dental, or vision coverage under Defendant's Plan (having maintained Tricare Reserve Select as his primary coverage), he is not eligible for the lump sum health coverage payment.

62. The separation notice also stated that employees would receive "an additional amount of base salary based on the portion of your notification period during which you were on leave status, if any."

### E. Defendant's Knowledge of USERRA Obligations

63. Defendant maintained written Military Leave policies and procedures demonstrating knowledge of its obligations to employees who serve in the uniformed services.

64. Defendant's Military Leave policy addressed reemployment, stating: "We understand that circumstances may change your expected return to work date or how you return to work after military service. The DLS team can work with you to determine the appropriate accommodation for your situation."

65. Defendant's policy acknowledged that employees on military leave might be eligible for Military Differential Pay (MDP) for up to 52 weeks or the duration of the Military Leave, whichever is less.

66. Despite maintaining policies acknowledging military leave protections, Defendant terminated Plaintiff's employment while he was on approved military leave.

## V. CAUSES OF ACTION

### COUNT I
### DISCRIMINATION IN VIOLATION OF 38 U.S.C. § 4311(a)

67. Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

68. At all times relevant to this Complaint, Plaintiff was a member of the uniformed services as defined by 38 U.S.C. § 4303(16).

69. USERRA prohibits an employer from denying "initial employment, reemployment, retention in employment, promotion, or any benefit of employment" to any person "on the basis of" that person's membership,

performance of service, application for service, or obligation to perform service in the uniformed services. 38 U.S.C. § 4311(a).

70. An employer violates USERRA if the person's membership, service, application for service, or obligation for service in the uniformed services is "a motivating factor" in the employer's adverse employment action, unless the employer can prove that the action would have been taken in the absence of such membership, service, or obligation. 38 U.S.C. § 4311(c)(1).

71. Plaintiff provided Defendant with proper advance notice of his military deployment on December 29, 2025, in accordance with Defendant's own Military Leave policy.

72. Defendant approved Plaintiff's military leave and acknowledged his reemployment rights through its written policies.

73. Defendant made the decision to terminate Plaintiff's employment on January 28, 2026, while Plaintiff was on approved military leave without pay and unable to compete for internal positions.

74. The temporal proximity between Plaintiff's military leave approval and commencement and the layoff decision—less than thirty (30) days—supports an inference of discriminatory motive.

75. Upon information and belief, a non-military comparator employee, Will Martin, was retained while Plaintiff was selected for termination, despite Plaintiff's superior job performance.

76. Mr. Martin subsequently assumed Plaintiff's job responsibilities, demonstrating that Plaintiff's position was not genuinely eliminated.

77. Upon information and belief, Mr. Martin's familial connection to AWS leadership—his wife runs the Department of Defense business for AWS—may have influenced the decision to retain Mr. Martin over Plaintiff.

78. Plaintiff's exceptional job performance, including achieving the largest sale in AWS history for the Wickr product ($6 million end-user license agreement with the U.S. Army), weighs against any legitimate basis for selecting him for termination in a reduction in force.

79. Defendant's refusal to disclose the selection criteria used to identify employees for layoff supports an inference that Plaintiff's military service was a motivating factor in the termination decision.

80. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, lost RSU vesting (approximately $414,750.00), lost sign-on bonus installments (approximately $26,500.00), and other economic losses.

81. Defendant's actions were willful, in that Defendant knew or showed reckless disregard for whether its conduct was prohibited by USERRA, as evidenced by Defendant's maintenance of written Military Leave policies demonstrating awareness of its legal obligations to servicemembers.

## COUNT II
## RETALIATION IN VIOLATION OF 38 U.S.C. § 4311(b)

82. Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

83. USERRA prohibits an employer from taking any adverse employment action against any person because such person "has taken an action to enforce a protection afforded any person under this chapter" or "has exercised a right provided for in this chapter." 38 U.S.C. § 4311(b).

84. Plaintiff exercised his USERRA rights by requesting and obtaining approved military leave for his deployment with the Army National Guard on December 29, 2025.

85. Defendant took adverse employment action against Plaintiff by terminating his employment on January 28, 2026—less than thirty (30) days after Plaintiff exercised his USERRA rights and while Plaintiff was on approved military leave.

86. The adverse action was taken while Plaintiff was actively on military leave and unable to apply for internal positions, effectively denying him an equal opportunity to compete for continued employment with Defendant.

87. The notification period established by Defendant (January 28, 2026, through April 28, 2026) will expire before Plaintiff can return from his military deployment in October 2026 or later, making it impossible for Plaintiff to avail himself of the opportunity to seek internal positions that Defendant afforded to non-military employees.

88. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, lost RSU vesting, lost sign-on bonus installments, and other economic losses.

89. Defendant's actions were willful, in that Defendant knew or showed reckless disregard for whether its conduct was prohibited by USERRA.

## COUNT III
## DENIAL OF REEMPLOYMENT RIGHTS IN VIOLATION OF 38 U.S.C. §§ 4312-4313

90. Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

91. USERRA entitles any person whose absence from a position of employment is necessitated by reason of service in the uniformed services to the reemployment rights and benefits provided by USERRA, provided that the person meets the statutory eligibility requirements. 38 U.S.C. § 4312(a).

92. Upon completion of military service of more than 90 days, a returning service member is entitled to reemployment in the "escalator position"—the position the

employee would have been employed in if the continuous employment had not been interrupted by military service, or a position of like seniority, status, and pay. 38 U.S.C. § 4313(a)(2)(A); 20 C.F.R. § 1002.191.

93. Plaintiff met all statutory eligibility requirements for reemployment under USERRA:

   a. Plaintiff provided advance notice of his military service on December 29, 2025;

   b. Plaintiff's cumulative period of military service with this employer does not exceed five years, as this deployment constitutes his first military absence from his employment with Defendant;

   c. Plaintiff has not been separated from military service under dishonorable conditions; and

   d. Plaintiff remains on active military service as of the date of this Complaint.

94. By terminating Plaintiff's employment while he was on military leave, Defendant has preemptively and effectively denied Plaintiff his statutory reemployment rights upon his return from deployment.

95. Plaintiff is entitled to return to his position or an equivalent escalator position upon completion of his military service.

96. Defendant's actions have eliminated Plaintiff's right to reemployment by establishing a termination date of April 28, 2026, which will occur months before Plaintiff can return from his military deployment in October 2026 or later.

97. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, lost RSU vesting, lost sign-on bonus installments, and other economic losses.

98. Defendant's actions were willful, in that Defendant knew or showed reckless disregard for whether its conduct was prohibited by USERRA.

## COUNT IV
## DENIAL OF BENEFITS OF EMPLOYMENT IN VIOLATION OF 38 U.S.C. § 4316

99. Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

100. USERRA provides that a person who is absent from a position of employment by reason of service in the uniformed services shall be deemed to be on furlough or leave of absence while performing such service and entitled to such other rights and benefits not determined by seniority as are generally provided by the employer to employees having similar seniority, status, and pay who are on furlough or leave of absence. 38 U.S.C. § 4316(b)(1).

101. A person who is reemployed under USERRA is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date

of commencement of service in the uniformed services, plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed. 38 U.S.C. § 4316(a).

102. By terminating Plaintiff, Defendant denied Plaintiff the rights and benefits to which he is entitled under USERRA, including:

a. Continued RSU vesting during and after his military service, with an estimated loss of approximately $414,750.00 for 1,876 unvested shares;

b. Continued sign-on bonus installments of approximately $26,500.00 remaining in Year 2 sign-on bonus;

c. Continued 401(k) participation and employer contributions;

d. Continued vacation and other leave accrual (130 hours vacation and 40 hours sick leave per year);

e. The opportunity to compete for internal positions during the notification period, which non-military employees received but which Plaintiff could not exercise due to his military deployment; and

f. Other benefits of employment.

103. Plaintiff was on military leave without pay and did not receive usual paychecks during the notification period, unlike similarly situated employees not on military leave who continued to receive pay and benefits during the same notification period.

104. Defendant's separation notice stated that employees during the notification period "will remain employed and will receive such pay and benefits (as applicable) for which you would be otherwise be eligible," yet Plaintiff was denied this benefit due to his military leave status.

105. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages including, but not limited to, lost RSU vesting, lost sign-on bonus installments, lost 401(k) contributions, and other lost benefits of employment.

106. Defendant's actions were willful, in that Defendant knew or showed reckless disregard for whether its conduct was prohibited by USERRA.

## VI. DAMAGES

107. As a result of Defendant's wrongful acts as alleged herein, Plaintiff has suffered and continues to suffer financial losses, including but not limited to:

a. Lost base salary from the date of separation through the present and continuing into the future, at the rate of $195,000.00 per year ($8,125.00 bi-monthly);

b. Lost Year 2 sign-on bonus installments, in the approximate amount of $26,500.00;

c. Lost RSU vesting in the approximate amount of $414,750.00 (1,876 unvested shares at current value);

d. Lost 401(k) contributions and other retirement benefits;

e. Lost vacation (130 hours per year), sick leave (40 hours per year), and other accrued benefits; and

f. Other economic losses to be proven at trial.

108. In accepting the position with Defendant, Plaintiff forfeited significant compensation from his prior employer, including 4,484 shares of Zoom stock with a current value of approximately $383,068.12 and a bonus of approximately $197,000.00, representing Plaintiff's detrimental reliance on Defendant's representations of continued employment.

109. Defendant's violations of USERRA were willful, entitling Plaintiff to liquidated damages in an amount equal to the amount of lost wages and benefits. 38 U.S.C. § 4323(d)(1)(C).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Douglas Michael Powers respectfully prays that this Court:

A. Accept jurisdiction over this matter;

B. Declare that Defendant's acts and practices as alleged herein are unlawful and violate the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301-4335;

C. Order Defendant, pursuant to 38 U.S.C. § 4323(d)(1)(A), to reinstate Plaintiff to his former position as Senior Security Specialist on the Wickr Go-to-Market Team (or to the escalator position or an appropriate comparable

position) with the salary, status, seniority, and benefits of employment which Plaintiff would have enjoyed but for Defendant's unlawful conduct, or, in the alternative, award Plaintiff front pay in lieu of reinstatement;

D. Award Plaintiff compensatory damages pursuant to 38 U.S.C. § 4323(d)(1)(B) for all lost wages and benefits suffered by reason of Defendant's failure to comply with USERRA, including but not limited to lost base salary ($195,000.00 per year), lost sign-on bonus installments (approximately $26,500.00), lost RSU vesting (approximately $414,750.00), lost 401(k) contributions, and all other lost benefits, together with prejudgment interest;

E. Award Plaintiff liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C) in an amount equal to Plaintiff's lost wages and benefits for Defendant's willful failure to comply with the provisions of USERRA;

F. Award Plaintiff reasonable attorneys' fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h)(2);

G. Permanently enjoin Defendant from engaging in the discriminatory and retaliatory conduct complained of herein and from further violations of USERRA;

H. Award Plaintiff prejudgment and post-judgment interest as permitted by law; and

I. Grant such other and further relief as this Court deems just and equitable.

## VIII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to

Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted this 20th day of March, 2026.

/s/ Christine A. Forsythe
Christine A. Forsythe
Georgia Bar No.: 321456
*Attorney for Plaintiff*

**The Forsythe Law Firm, LLC**
1050 Crown Pointe Parkway
Suite 1240
Atlanta, GA 30338
Phone: (404) 476-2717
Fax: 770-212-9213
Email: christine@forsythelawfirm.com

Joseph A. Whitcomb
*pro hac vice* pending

**Whitcomb, Selinsky, PC**
300 Union Boulevard
Suite 200
Lakewood, CO 80228
Phone: (303) 534-1958
Fax: 303-534-1949
Email: joe@whitcomblawpc.com

Counsel for Plaintiff certifies that this Complaint complies with paper, margin and

font requirements as approved by the court in LR 5.1B.

*/s/ Christine A. Forsythe*
Christine A. Forsythe
Georgia Bar No.: 321456
*Attorney for Plaintiff*

**The Forsythe Law Firm, LLC**
1050 Crown Pointe Parkway
Suite 1240
Atlanta, GA 30338
Phone: (404) 476-2717
Fax: 770-212-9213
Email: christine@forsythelawfirm.com